QUEEN ET AL., APPELLEES, *v.* GASTAN ET AL., APPELLEES; HUNUSOVA ET AL., APPELLANTS.

(No. 9720—Decided December 20, 1965.)

*Messrs. Hoover, Beall & Eichel,* for plaintiff-appellees.
*Mr. Robert T. Keeler, Mr. James R. Bridgeland* and *Messrs. Taft, Stettinius & Hollister,* for appellants.
*Mr. Norbert A. Michalski* and *Messrs. Lindhorst & Dreidame,* for appellee Helen Gaston.
*Mr. Jozef Lettrich,* for appellee Vincent Puskar.

HOVER, J.   This is an appeal on questions of law from a judgment of the Probate Court of Hamilton County construing the last will and testament of Veronika Huncik, a resident thereof, and directing the payment of the residue of the estate to certain contingent domestic legatees rather than to primary legatees resident in Czechoslovakia.

The matter was considered on the transcript of the docket and journal entries of the court below, a bill of exceptions, and the briefs and arguments of counsel.

There is only one question involved. It concerns the proper construction of Item VI of such will, which is as follows:

"Item VI. All the rest, residue and remainder of my estate I give, devise and bequeath as follows:

"A. One fourth (¼) to my brother, Joseph Milhalus, or his lineal descendents.

"B. One fourth (¼) to my brother, Vincent Milhalus, or his lineal descendants.

"C. One fourth (¼) to my sister, Josephine Mishik, or her lineal descendents.

"D. One eighth (⅛) to my nephew, Frank Milhalus, or his lineal descendents.

"E. One eighth (⅛) to my niece, Mary Beyer, or her lineal descendents.

"All of the legatees mentioned in this Item are now residents of Czecho-Slovakia and if, at the time of my death or within one year thereafter, the legacies can not, for any reason, be delivered to any or all of said legatees then such legacy or legacies that can not be delivered I give, devise and bequeath to my two nephews, Joseph Gastan and Stefan Gastan and Vincent Puskar, husband of my niece, equally, share and share alike. In such event it is my desire that they be ever mindful of aiding any of my relatives who do not benefit under this will."

The court is particularly concerned with that portion of Item VI above which disposes of the residue of the estate by giving it to two nephews and a niece, resident in the United States, as contingent beneficiaries in the event the legacies bequeathed to named residents of Czechoslovakia or their lineal descendants cannot "at the time of my death or within one year thereafter, * * * for any reason, be delivered to any or all of said legatees."

The will was dated July 31, 1957. Testator died December 4, 1957. Consequently, the one-year time limit provided by the will for delivery would terminate December 4, 1958.

In construing the will the court was called upon to determine and give effect to the real intention of the testator, thus requiring a finding of whether an effective delivery of the legacies could be made to the benefit of the foreign heirs not later than December 4, 1958.

It was contended on behalf of the foreign legatees that a physical delivery could be made without difficulty. It was also

contended that Item VI was so worded to avoid any possible transfer to an Alien Property Custodian and that, since no such official existed, either when the will was drawn or in 1958, or now, there would be no further intended limitation on the delivery over to the foreign legatees. On the other hand, it was contended by the domestic legatees that the factual conditions existing at the time in Czechoslovakia and Czechoslovakian laws applicable to the ownership of property, especially sums which were comparatively large, were such that the legatees would not be in a position to fully enjoy or derive substantial benefit from their inheritances. Testimony received by the court on behalf of both contending parties is lengthy, at times confusing, and totally contradictory; the foreign legatees claiming that delivery of the money could be made in the normal course of business and that a large portion of it, to wit, forty per cent, could be paid over in Tuzex certificates which, in turn, would be convertible to so-called Tuzex kronen in Czechoslovakia. This is a special form of currency not in general circulation, and spendable only in certain state-owned and -operated stores for the purchase of items catalogued by those stores. It was claimed on the other hand, and evidence was presented in support of the claim, that there was an ill-defined but definite limit to the amount of money or property which could be safely or lawfully possessed by persons in the subject country and that the legatees could not receive the full or substantial benefit of the legacy because of the totally controlled economy and, further, because of the control exerted over individuals in the country by the sole political party in existence there.

The possibility of such a situation is recognized and provided for by so-called "Iron Curtain Statutes" of numerous states, such as Sections 2113.81 and 2113.82 of the Revised Code of Ohio. The statute is not controlling of this case, but it is suggestive of the problem presented and is certainly expressive of the general policy of the state of Ohio in regard to certain foreign bequests. There seems to be no doubt upon the state of this record that, if it were not for the provision in the will for contingent beneficiaries, the "Iron Curtain Statute" above would have clear and proper application in the sound discretion of the trial court.

Neither court nor counsel have been able to find any direct

authority on this subject in adjudicated Ohio cases. Counsel for the appellant foreign legatees cite, among other cases, *Kolovrat* v. *Oregon* (1961), 366 U. S. 187, 6 L. Ed. 2d 218, 81 S. Ct. 922, as requiring the payment of a legacy to a so-called "Iron Curtain" country—in that instance, Yugoslavia. The case is readily distinguishable since the Supreme Court points out that the subject matter is provided for in existing treaties between the United States and Yugoslavia, which take precedence over state statutes to the contrary. Appellants also cite *Matter of Reidl* (1965), 23 App. Div. 2d 171, 259 N Y. S. 2d 217, in which the Appellate Division of the Supreme Court of New York there determined that the "Iron Curtain" statute of New York could prevent the payment of an inheritance "where it appears that a legatee would not have the benefit of the money or property constituting his legacy, * * * [and that] such direction is entirely proper where the legatee resides in a foreign country and there is reason to believe that the legacy may be confiscated in whole or in part." That court, however, upon the record before it, determined that the payment of legacies to Czechoslovakia nationals by means of Tuzex certificates would be proper and effective.

The court above notes that such certificates were widely used and that there was no record that any such certificates, or the merchandise represented by them, had been confiscated, directly or indirectly, and that the recipient thereof may either use them or transfer them. The court there was dealing with the situation as it found it to exist in 1965, and not in 1958 which is the time period with which the court is concerned in this case. The court below was required to make its determination on the basis of the evidence presented to it and what that showed in regard to similar transactions in 1958. There is evidence in the record before the court here that in 1958 a limitation of forty per cent was placed upon Tuzex transactions as to inheritances; that special Tuzex bank accounts in the name of the recipient were an asset without a certain benefit; that the use of Tuzex certificates resulted in providing selected items of personal property rather than giving the legatee a full and unrestricted use of his inheritance; and that Tuzex certificates were not transferable, except possibly on a black or gray market basis. On the state of the record the facts are decidedly differ-

ent from those found in the New York case. In reviewing the proceedings of the court below, this court must take cognizance of the evidence presented there rather than in some other case.

The *Reidl case* is the only one of its kind cited in behalf of the appellants. On the other hand, in 1952, the Surrogate Court of New York County in *In re Hirschberg's Estate,* 112 N. Y. S. 2d 919, was confronted with a testamentary problem very similar to the one existing here. In that case the payment of inheritances to residents of Poland was conditioned upon the ability to make them wholly effective within three years by emigration. The court found this had not been done and declared that the legacies would lapse and be disposed of as intestate property.

In *Brizgys* v. *Treasurer of Union County* (1964), 84 N. J. Super. 485, 202 A. 2d 709, the Appellate Division of the Superior Court of New Jersey found that a legacy to the Roman Catholic Church in Vevirzenai, Lithuania, could not be paid over with any assurance that the intended beneficiaries would receive full or substantial benefit from it and applied the New Jersey equivalent of Ohio's "Iron Curtain" statute. The court there further held that the burden of proof was upon the claimant to convince the court that the inheritance would and could be used as intended.

In *Wolders Estate* (1962), 28 Pa. D. & C. 2d 51, the decedent died intestate with next of kin in Czechoslovakia. The evidence there indicated that the funds, although not subject to inheritance tax, could be paid only to a state bank where it could be had in either crowns or Tuzex certificates at a fixed rate; that money sent other than by Tuzex would be subject to a heavy tax; that Tuzex certificates were convertible to dollars at one rate, while regular-circulation kronen would be received at another and lesser rate; and that both rates were under the official exchange rate for Czechoslovakia kronen.

Under all these circumstances, and on the state of the record before it, the court below, in finding that the legacies should be paid to the contingent domestic heirs rather than to the primary foreign heirs, was justified in resolving the factual situation relative to the entitlement to the residue by the domestic heirs as provided in the judgment, since its sole function

was to determine the true intent of the testator on the basis of the evidence presented to it.

The judgment is, accordingly, affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., and LONG, J., concur.